IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHANDRA H. BREWTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:14-CV-436(MTT) |
| | ) |
| LIBERTY MUTUAL HOLDING | ) |
| COMPANY, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### ORDER

Defendants Liberty Mutual Group, Inc. ("LMGI") and Liberty Mutual Insurance Co. ("LMIC") have moved to dismiss the claims against them for failure to state a claim (Doc. 10), and Defendant Liberty Mutual Holding Company, Inc.("LMHC") has moved to dismiss the claims against it for lack of personal jurisdiction or, alternatively, for failure to state a claim (Doc. 12).[1] For the following reasons, the motions are **GRANTED**.

### I.     BACKGROUND[2]

Plaintiff Chandra Brewton seeks relief on behalf of herself and others similarly situated for the Defendants' alleged refusal to assess and pay damages for diminution in value when claims are made under their homeowners insurance policies.  Brewton alleges she "timely reported a claim for direct physical loss to her home resulting from

---

[1] The allegations of the complaint now at issue were not changed by the Plaintiff's recently-filed amended complaint. (Docs. 1; 23).  Rather, the amended complaint only changed the allegations in Count 2, which the Court dismissed in an Order entered January 19, 2016.  (Doc. 22).  Because the amended complaint does not change the allegations of the complaint relevant to these pending motions, this Order cites to the original complaint.

[2] The facts are taken from the allegations in the complaint (Doc. 1) and accepted as true for purposes of this motion.

water damage," but "in violation of Georgia law and in breach of their insurance contract" with Brewton, the Defendants failed to assess and pay damages for diminution in value of her property. (Doc. 1, ¶ 2).

Brewton's insurance policy was issued by Defendant First Liberty Insurance Corporation ("First Liberty"),[3] but Brewton seeks to hold Defendants LMGI, LMIC, and LMHC liable based on an alter ego, agency, and/or joint venture theory. LMGI and LMIC have moved to dismiss for failure to state a claim upon which relief can be granted, contending the complaint does not sufficiently allege a basis for holding them liable, and LMHC has moved to dismiss for lack of personal jurisdiction. Brewton asserts this Court has personal jurisdiction over LMHC for the same reasons she contends liability is proper—alter ego, agency, and/or joint venture.

The allegations relating to alter ego, agency, and joint venture are:

11. LMHC operates primarily through four business units: (1) Commercial Insurance; (2) Personal Insurance; (3) Global Specialty; and (4) Liberty International. These business units utilize various trade names and trademarks, such as "Liberty Mutual Insurance" and "LibertyGuard." Each of these business units market and underwrite insurance policies issued by the numerous insurance entities owned or controlled by LMHC. LMHC, its various business units, and the various insurance entities it owns and/or operates are hereinafter sometimes referred to collectively as "Liberty Mutual."

12. LMGI is a subsidiary of LMHC.

---

[3] First Liberty filed a separate motion to dismiss Brewton's request for a declaratory judgment (Count 2). (Doc. 7).

13. LMIC is a member company and subsidiary of LMHC and LMGI.

14. LMHC is the ultimate parent company of FLIC.[4]

15. FLIC is controlled by LMHC.

16. FLIC is a subsidiary or affiliated insurer of LMGI.

17. FLIC is controlled by LMGI.

18. FLIC markets and underwrites insurance policies issued by certain LMGI stock insurance companies and affiliated insurers, including LMIC.

19. FLIC is controlled by LMIC.

20. Upon information and belief, at all relevant times herein, each Defendant acted in all aspects as agent, apparent agent, and alter ego for each other Defendant and as agent, apparent agent, and alter ego of their ultimate parent company, LMHC.

21. Upon information and belief, at all relevant times herein, each Defendant was engaged in a joint venture with each other Defendant.

22. Defendants share and have in common several officers and directors. For example, David H. Long is the chief executive officer of each Defendant.

23. Defendants have a common administrative or principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02166.

24. Defendants coordinate and commingle financial and other resources by making financial transactions between each other, by filing consolidated federal income tax returns, by issuing consolidated financial statements, and by other means. The consolidated financial statements issued by Defendant

---

[4] FLIC stands for First Liberty Insurance Corporation.

Liberty Mutual Holding Company, Inc. include affiliated entities over which it exercises control, including LMIC, LMGI, and FLIC.

25. Defendants all operate and trade under the common name of Liberty Mutual and use the same logo to identify and promote their business. Every page of the Policy issued to Plaintiff displays the Liberty Mutual logo and name.

26. The Policy states "Thank you for insuring with Liberty Mutual."

27. The Policy states that questions about the Policy can be directed to LibertyMutual.com.

28. The instructions about how to obtain information about the Policy are signed by "Your Liberty Mutual Service Team."

29. The Policy directs that claims under the Policy can be reported to LibertyMutual.com/Claims.

30. The Policy is titled "LibertyGuard Deluxe Homeowners Policy." "LibertyGuard" is a registered trademark owned by LMHC.

31. Plaintiff's premium payments under the Policy are automatically withdrawn from her checking account. Plaintiff's records reflect that these payments are made to "Liberty Mutual."

32. Defendants' actions are sufficient to find that there is an amalgamation of each of the Defendants.

(*Id.* ¶¶ 11-32).

## II.   DISCUSSION

### A. LMGI and LMIC's Motion

#### 1. Legal Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

#### 2. Alter Ego

Brewton contends LMGI and LMIC are liable for First Liberty's alleged breach of contract on an alter ego theory.  "Under the alter ego doctrine, equitable principles are

used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." *Kissun v. Humana, Inc.*, 267 Ga. 419, 419-20, 479 S.E.2d 751, 752 (1997). "[G]reat caution should be exercised by the court," however. *Amason v. Whitehead*, 186 Ga. App. 320, 321, 367 S.E.2d 107, 108 (1988).

> In order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice. To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist. The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.

*Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-90, 612 S.E.2d 296, 299 (2005) (citation omitted). Thus, Georgia courts disregard the corporate form if: (1) the corporation is a "mere instrumentality" of the parent company or the shareholders, and (2) to observe the corporate form would "work an injustice." *See Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1328 (N.D. Ga. 2014); *Fla. Shade Tobacco Growers, Inc. v. Duncan*, 150 Ga. App. 34, 34, 256 S.E.2d 644, 644 (1979).

Because it is an equitable doctrine, piercing the corporate veil to hold a parent company or shareholder liable "is appropriate[ ] … only in the absence of adequate remedies at law." *Baillie Lumber Co.*, 279 Ga. at 290, 612 S.E.2d at 299. Thus, the Georgia Supreme Court has held it is required, "as a precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable on a corporate claim, that there be insolvency on the part of the corporation in the sense that there are insufficient

corporate assets to satisfy the plaintiff's claim." *Johnson v. Lipton*, 254 Ga. 326, 327, 328 S.E.2d 533, 535 (1985). Following that holding, federal courts applying Georgia law have concluded a corporate defendant must be insolvent or have insufficient assets to satisfy the plaintiff's claim before the plaintiff can pierce the corporate veil to hold a parent company or shareholder liable. *See B & F Sys., Inc. v. LeBlanc*, 2011 WL 4103576, at *34 (M.D. Ga.); *Friedman's, Inc. v. Morgan Schiff & Co. (In re Friedman's)*, 385 B.R. 381, 414-15 (S.D. Ga.), *vacated in part by* 396 B.R. 623 (S.D. Ga. 2008); *Adams v. Unum Life Ins. Co. of Am.*, 508 F. Supp. 2d 1302, 1315 (N.D. Ga. 2007); *Perry v. Unum Life Ins. Co. of Am.*, 353 F. Supp. 2d 1237, 1240 (N.D. Ga. 2005).

LMGI and LMCI contend the allegations of their control over First Liberty are conclusory, and thus, First Liberty cannot meet the first prong of the alter ego test. Though Brewton does allege in conclusory fashion that LMGI and LMIC exert control over First Liberty, she has alleged additional supporting facts. For example, she has alleged that the Defendants issue consolidated financial statements; file consolidated federal income tax returns; have in common several officers and directors; share a common office; operate and trade under the common name of "Liberty Mutual" and use the same logo to identify and promote their business; that she made payments under the policy to "Liberty Mutual" and was told to file claims at "LibertyMutual.com/Claims"; that a letter with instructions on where to find Policy information was signed by "your Liberty Mutual Service Team"; communications regarding the policy say "Thank you for insuring with Liberty Mutual"; "LibertyGuard," included in the policy title, is a registered trademark owned by LMIC; and that First Liberty markets and underwrites insurance policies for LMIC and other LMGI affiliated insurers. The Court cannot say Brewton's

allegations are insufficient to show Brewton is a "mere instrumentality" of LMGI and LMIC.  *Cf. Najran Co. for Gen. Contracting & Trading v. Fleetwood Enters., Inc.*, 659 F. Supp. 1081, 1096-97 (S.D. Ga. 1986) (describing factors the court considered in deciding whether plaintiff met burden to show corporate veil should be pierced as to parent corporation).[5]

LMGI and LMIC further argue Brewton has failed to allege First Liberty is insolvent or that the Defendants' corporate structure will allow First Liberty to evade its contractual responsibilities.  Thus, they contend the allegations are insufficient to satisfy the second prong of the alter ego test.  Brewton argues that "the class-action nature of this case indicates, taking all reasonable inferences in favor of Plaintiff, that First Liberty may not be able to satisfy an eventual judgment against it." (Doc. 14 at 11).  There is no allegation First Liberty is insolvent, which, as discussed above, is a requirement under Georgia law.  Even assuming the inability to satisfy an eventual class-action judgment would be sufficient, there is also no such allegation in the complaint.

The only allegation in the complaint Brewton cites in support of the second prong of the alter ego analysis is that Brewton was required to make its payments under the policy to "Liberty Mutual." (Doc. 1, ¶ 31).  Thus, Brewton contends the Liberty Mutual Defendants benefitted from First Liberty's contract with Brewton and should share in the alleged liability.  However, the allegation that Brewton made her payments to "Liberty Mutual" does not plausibly suggest that adhering to the corporate form would somehow

---

[5] The Defendants distinguish *Najran* because the court considered many other factors, not alleged in the present case, in deciding whether subsidiaries' corporate veils should be pierced to hold the parent company liable.  While this is true, the court was deciding whether to grant summary judgment to *the plaintiff* on its claim of alter ego (rather than deciding whether the plaintiff's allegations of alter ego were sufficient to survive a motion to dismiss).  *Najran*, 659 F. Supp. at 1096.

"defeat justice, perpetuate fraud or [allow First Liberty] to evade contractual or tort responsibility."

*Najran*, cited by Brewton in support, is distinguishable.  In that case, the district court found the second prong of the alter ego test satisfied based on a parent corporation's profiting from "substantial favorable publicity" following the consummation of a contract between two of the parent company's subsidiaries and the plaintiff.  659 F. Supp. at 1097.  Specifically, the court pointed to several articles "mak[ing] glowing reference" to the parent corporation with no mention of the subsidiaries with whom the plaintiff actually contracted." *Id.*  The court also noted that the corporate veil was "diaphanous (if not transparent)" and that it was "truly offensive" for the parent company "to accept the general applause of the business community directed toward [its] prowess in 'landing' this contract" but to subsequently "disclaim[ ] … interest in the transaction." *Id.* at 1097-98.  Pretermitting whether this is sufficient in light of the Georgia Supreme Court's holding that insolvency is a "precondition" to piercing the corporate veil,[6] Brewton has not alleged facts comparable to those in *Najran* suggesting an equitable reason to pierce the corporate veil and hold LMGI and LMIC liable.

It may be that as Brewton investigates her claims against First Liberty, Brewton can allege facts to support her alter ego theory.  But the allegations Brewton now makes are insufficient.

### 3. Actual or Apparent Agency

The existence of a parent/subsidiary relationship does not in and of itself establish an agency relationship under Georgia law. *Matson v. Noble Inv. Grp., LLC*, 288 Ga. App. 650, 659, 655 S.E.2d 275, 282 (2007).  "The relation of principal and

---

[6] The court in *Najran* did not address this case.

agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1.

> To prove actual agency, the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work, as distinguished from the right merely to require certain definite results in conformity to the contract. The right to control the purported agent's time means the right to control the hours of work. The right to control the method and manner of work means the right to tell the purported agent how to perform all details of the job, including the tools he should use and the procedures he should follow.

*Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc.*, 283 Ga. App. 711, 713, 642 S.E.2d 364, 365 (2007) (internal quotation marks and footnotes omitted).

Though Brewton alleges First Liberty markets and underwrites insurance policies issued by LMIC and LMGI, she alleges no facts regarding the level of control LMIC and LMGI exert over First Liberty in this regard.  Brewton does allege First Liberty was "controlled by" both LMGI and LMIC but does not elaborate on the nature of this "control."  (Doc. 1, ¶¶ 17, 19).  There are also no allegations about any express agency agreement or other facts to suggest First Liberty was LMIC's and/or LMGI's agent, beyond a conclusory allegation that "at all relevant times herein, each Defendant acted in all respects as agent, apparent agent, and alter ego for each other Defendant and as agent, apparent agent, and alter ego of their ultimate parent company, LMHC."  (*Id.* ¶ 20).  Therefore, the Court concludes Brewton has not sufficiently alleged an actual agency relationship between First Liberty and either LMGI or LMIC.

Brewton also asserts a theory of apparent agency in her complaint.

> In order to recover under a theory of apparent or ostensible agency, a plaintiff must establish three elements: (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury.

*Bright v. Sandstone Hospitality, LLC*, 327 Ga. App. 157, 158, 755 S.E.2d 899, 902 (2014) (citation omitted).

Brewton contends she has sufficiently alleged these elements because (1) First Liberty uses the "Liberty Mutual" logo and a trademark owned by First Liberty, (2) "letters accompanying the Policy state that it is issued by 'Liberty Mutual,'" (3) First Liberty markets and underwrites policies issued by LMIC and LMGI, and (4) Brewton makes payments under the policy to "Liberty Mutual."  (Doc. 14 at 13).  However, as the Defendants point out, there are no allegations that *LMIC and/or LMGI* made out any representations to Brewton and thus no allegations that they held First Liberty out as their agent.  *See Kids R Kids Int'l, Inc., v. Cope*, 330 Ga. App. 891, 895, 769 S.E.2d 616, 619 (2015) ("To establish the required elements of apparent agency, it is not enough that the plaintiff *believe* that an agency relationship exists.  Neither is it sufficient that the *agent* represent his status as agent.  It must be established that the *principal* held out the agent as its agent." (internal quotation marks and footnote omitted)).  There are three Defendants in this case with "Liberty Mutual" as part of their name, and Brewton only alleges that her premium payments were automatically withdrawn from her checking account and made to "Liberty Mutual."  (Doc. 1, ¶ 31).  There is no mention of which Defendant authorizes this automatic withdrawal.  Brewton only alleges that the policy "displays the Liberty Mutual logo and name" and says "Thank you for insuring with Liberty Mutual," that questions and claims under the policy can be reported to LibertyMutual.com and LibertyMutual.com/claims, and that "instructions about how to obtain information about the Policy are signed by 'Your Liberty Mutual Service Team.'" (Doc. 1, ¶¶ 25-29).  However, the Georgia Court of Appeals has held that mere use of

logos/trademarks is insufficient to show apparent agency.  *See Kids R Kids Int'l, Inc.*, 330 Ga. App at 895, 769 S.E.2d at 619.  Finally, the fact that First Liberty directs policyholders to the LibertyMutual.com website or the fact that First Liberty markets and underwrites policies for LMIC and LMGI likewise does not show that either LMIC or LMGI held First Liberty out as its agent.

Even if these allegations were sufficient to show LMIC and/or LMGI held First Liberty out as its agent, they do not plausibly suggest Brewton "justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation." Though Brewton argues in her response that she entered into a contract with First Liberty based on "these representations,"[7] there is no such allegation in the complaint. (Doc. 14 at 13).

### 4. Joint Venture

Finally, Brewton seeks to hold LMIC and LMGI liable on the theory that they were part of a joint venture with First Liberty.

> The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other.

*Kissun*, 267 Ga. at 420, 479 S.E.2d at 752.  Brewton has not alleged each party exercises mutual control over any joint undertaking but has instead specifically alleged LMIC and LMGI exercise control over First Liberty.  (Doc. 1, ¶¶ 17, 19).  No other allegations in the complaint suggest mutual control.  *See Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170, 617 S.E.2d 153, 155 (2005) ("The right to exercise mutual control is a crucial part of a joint venture.").

---

[7] The Court is unaware of what representations Brewton is referring to.

### B. LMHC's Motion

#### 1. Legal Standard

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation marks and citation omitted). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (internal quotation marks and citation omitted). "'Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.'" *Id.* (citation omitted).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* at 1257-58 (internal quotation marks and citation omitted). This two-step inquiry is necessary because the long-arm statute does not provide jurisdiction to federal courts in Georgia that is coextensive with procedural due process.[8] *Id.* at 1259. Rather, the statute "imposes

---

[8] The Court acknowledges the apparent tension between *Diamond Crystal* and Georgia courts' interpretation of the Georgia long-arm statute following *Innovative Clinical & Consulting Services., LLC v. First National Bank of Ames*, 279 Ga. 672, 620 S.E.2d 352 (2005). According to *Diamond Crystal*, *Innovative Clinical* holds that O.C.G.A. § 9-10-91(1) is not coextensive with due process limitations and must be analyzed independently therefrom. Yet state courts do not appear to read *Innovative Clinical* the same way. *See, e.g.*, *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 137, 661 S.E.2d 185, 188 (2008) (citing *Innovative Clinical* for the proposition that "the language of O.C.G.A. § 9-10-91(1) must be construed as reaching 'to the maximum extent permitted by procedural due process'"). Moreover, prior to *Diamond Crystal* at least one federal district court read *Innovative Clinical* to extend § 9-10-91(1) to the limits of the

- 13 -

independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* In short, jurisdiction that might appear to be conferred by statute may be negated by due process concerns, and vice versa. *See id.* at 1261.

### 2. Analysis

LMHC contends this Court lacks personal jurisdiction over it because (1) LMHC did not transact business or own real property in Georgia so as to subject it to jurisdiction under Georgia's long-arm statute; (2) jurisdiction over LMHC would violate the Due Process Clause of the Fourteenth Amendment; and (3) personal jurisdiction cannot be imputed to LMHC. In support of its motion, LMHC submitted the declaration of James. R. Pugh, an Assistant Secretary of LMHC, who explains LMHC's lack of contacts with the state of Georgia and further states LMHC "does not directly offer insurance products or insurance services to the public, nor does it enter into any agency contracts pursuant to which third parties or agents offer insurance products or insurance services on behalf of [LMHC]." (Doc. 12-2, ¶ 3).

In response, Brewton argues jurisdiction over LMHC is appropriate based on an alter ego, agency, and/or joint venture theory. Brewton makes it clear that she is not asserting LMHC itself has any contacts that would subject it to personal jurisdiction in Georgia.[9]

---

Due Process Clause.  *See, e.g.*, *Global Payments Direct, Inc. v. Am. Bank of Commerce*, 2006 WL 269967, at *2 n.2 (N.D. Ga.).

[9] Brewton does not go through the two-part analysis in arguing personal jurisdiction over LMHC is proper. Rather, she assumes that if LMHC is the alter ego of, principal of, or joint venture with First Liberty under Georgia law, personal jurisdiction exists over LMHC.

### a. Alter Ego

A nonresident parent corporation may be subject to personal jurisdiction on an alter ego theory based on the Court's personal jurisdiction over a subsidiary. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1301-02 (N.D. Ga. 2013); *Vogt v. Greenmarine Holding, LLC*, 2002 WL 534542, at *4-7 (N.D. Ga.). Because this case is premised on diversity jurisdiction, the Court looks to Georgia law to determine whether the exercise of personal jurisdiction on an alter ego theory is appropriate. *See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (looking to Ohio law in diversity case to see if alter ego theory of personal jurisdiction was appropriate); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1270-74 (11th Cir. 2002) (looking to Florida law in diversity case to determine whether personal jurisdiction over parent based on subsidiary's contacts was appropriate).

As discussed above, Brewton has failed to allege sufficient facts to meet the second prong of the alter ego test and show a basis for disregarding the corporate form of First Liberty to hold LMGI and LMIC liable on an alter ego theory under Georgia law. For the same reasons, Brewton has failed to allege sufficient facts to justify disregarding First Liberty's corporate form to hold LMHC liable for First Liberty's alleged breach of contract. *See Yukon Partners, Inc. v. Lodge Keeper Grp., Inc.*, 258 Ga. App. 1, 6, 572 S.E.2d 647, 652 (2002) (plaintiff must show incorporation of the subsidiary "was a sham or that it was used to defeat a public convenience, to justify wrong, protect fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard of the corporate entities" to impute contacts for personal jurisdiction on an

alter ego theory (internal quotation marks and citation omitted)).  Therefore, Brewton has failed to allege a prima facie case of jurisdiction on an alter ego theory.

Though, as discussed below, the Court declines to defer ruling on the motion to allow Brewton to engage in jurisdictional discovery, the Court recognizes that as Brewton investigates her claims against First Liberty, Brewton may be able to allege facts to support an alter ego theory of personal jurisdiction.

### b.  Actual or Apparent Agency

Brewton has failed to allege a prima facie case of personal jurisdiction as to LMHC based on a theory of actual or apparent agency for the same reasons she has failed to state a claim based on actual or apparent agency against LMGI and LMIC. There are no additional allegations in the complaint pertaining specifically to LMHC that would suggest First Liberty was its agent.  *Cf. Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 660-61 (11th Cir. 2015) (holding plaintiff failed to establish agency relationship under Georgia law and thus failed to establish personal jurisdiction under Georgia long-arm statute).

### c.  Joint Venture

Brewton has also failed to allege a prima facie case of jurisdiction based on a theory of joint venture as to LMHC for the same reasons, discussed above, that she has failed to allege a theory of joint venture as to LMGI and LMIC.  There are no allegations of a joint undertaking or mutual control with respect to any of LMHC's subsidiaries. Further, under Georgia law it appears that the existence of a joint venture in and of itself is not sufficient to impute jurisdictional contacts.  *Cf. Catholic Stewardship Consultants,*

*Inc. v. Ruotolo Assocs., Inc.*, 270 Ga. App. 751, 756-57, 756 n.1, 608 S.E.2d, 1, 4-5, 4 n.1 (2004).

### 3. Jurisdictional Discovery

In her response brief, Brewton requests that, should the Court deem her jurisdictional allegations insufficient, she be allowed to conduct jurisdictional discovery. However, the Court declines to allow jurisdictional discovery because Brewton has failed to allege a prima facie case of personal jurisdiction over LMHC.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946-47 (7th Cir. 2000); *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1318, 1328 (N.D. Ga. 2014) ("The McCarthys' failure to establish a prima facie case for personal jurisdiction and to provide examples of discovery requests they would propound means that they have essentially asked for a jurisdictional fishing expedition, and the Court is not required to allow such an expedition."); *Melech v. Life Ins. Co. of N. Am.*, 2011 WL 1047716, at *7 (S.D. Ala.) ("Plaintiff fails to offer proof that the CIGNA Defendants exercised an unusually high degree of control over its subsidiary, or that the subsidiary acted merely as an agent.  Rather, Plaintiff merely hopes to prove CIGNA Defendants' control with discovery."); *cf. Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313-14 (11th Cir. 2009) (holding district court abused its discretion in allowing subject matter jurisdictional discovery when plaintiff failed to allege prima facie case for subject matter jurisdiction pursuant to an exception to the Foreign Sovereign Immunities Act in complaint).[10]

---

[10] In *Majd-Pour v. Georgiana Community Hospital, Inc.*, cited by Brewton in support of her request for jurisdictional discovery, the Eleventh Circuit held it was an abuse of discretion for the district court to dismiss the case for lack of subject matter jurisdiction without allowing for jurisdictional discovery and noted the plaintiff's attorney "protested that with discovery he could show the existence of jurisdiction."

### III.   CONCLUSION

For the foregoing reasons, LMIC and LMGI's motion to dismiss (Doc. 10) is **GRANTED**, and LMHC's motion to dismiss (Doc. 12) is **GRANTED**.  The dismissals are without prejudice.  The Court declines to allow jurisdictional discovery.

**SO ORDERED**, this 2nd day of February, 2016.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

724 F.2d 901, 903 (11th Cir. 1984).  The district court dismissed the case based on the plaintiff's failure to sufficiently establish subject matter jurisdiction at a hearing on a motion for a temporary restraining order ("TRO").  *Id.* at 902-03.  The Eleventh Circuit held that, while this correctly resulted in the denial of the TRO, the dismissal of the entire case was premature.  Notably, the Eleventh Circuit clarified that the district court's dismissal was *not* based on any potential deficiencies in the allegations of the complaint but, rather, only on the plaintiff's failure to prove jurisdictional facts at the TRO hearing.  *Id.* at 903 n.1.