IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHANDRA H. BREWTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CIVIL ACTION NO. 5:14-CV-436(MTT) |
| THE FIRST LIBERTY INSURANCE CORPORATION, | ) ) ) ) |
| Defendant. | ) ) ) |

## ORDER

Defendant, First Liberty Insurance Corporation, has moved for summary judgment. Doc. 51. First Liberty argues that (1) Brewton is judicially estopped from bringing her claims because she failed to disclose her claim during her bankruptcy case, and (2) First Liberty in fact assessed whether the value of Brewton's home was diminished and thus Brewton's "failure to assess" claim fails as a matter of law. *Id.* at 1. As discussed below, First Liberty's motion (Doc. 51) is **GRANTED in part** and **DENIED in part**. Summary judgment is granted for First Liberty on Brewton's failure to assess claim, but Brewton is not judicially estopped from pursuing her "failure to pay" claim.

## I. BACKGROUND

This case is one of several putative class actions filed in this Court against insurers who, the plaintiffs allege, take the position that their homeowner's insurance policies do not provide coverage for the diminished value of property damaged as the result of a loss that is otherwise covered by their policies. Basically, the plaintiffs, who are all represented by the same lawyers, want their insurers to accept what they contend has been clearly established by the Georgia Supreme Court—when the value

of a home has decreased as the result of a covered loss even though the home has been fully repaired, the insurer must compensate the insured for that diminished value.[1] The plaintiffs in these putative class actions claim that insurers have failed to assess their homes for diminished value and have failed to pay for diminished value.

Diminished value, also called diminution of value or stigma damages, has a very specific meaning. "In [some] cases, notwithstanding remedial measures undertaken by the injured party, there remains a diminution in value of the property, and an award of only the costs of remedying the defects will not fully compensate the injured party." *John Thurmond & Assocs., Inc. v. Kennedy*, 284 Ga. 469, 471 n.2, 668 S.E.2d 666, 669 n.2 (2008) (citation omitted). In particular, the underlying cause of a loss can stigmatize a property, resulting in "a negative public perception or fear that damage to property could create future problems." Doc. 53-7 at 2 (First Liberty's Georgia Diminution in Value Frequently Asked Questions). "Even though the property has been restored to its pre-loss condition in terms of appearance and function, the property carries an intangible taint or 'stigma' due to the nature of the loss." *Id*. Thus, if a policy covers diminished value, adjusters must determine whether the insured property, as a result of stigma, is worth less even though it has been repaired. *State Farm Mut. Auto. Ins. Co. v. Mabry*, the seminal diminished value case, involved automobile insurance policies, and automobiles provide a well-known example of diminished value as the result of stigma. 274 Ga. 498, 556 S.E.2d 114 (2001). Typically, the repair of a wrecked car fixes it. But there is a common perception that a wrecked car loses value

---

[1] *See State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 508, 556 S.E.2d 114, 122-23 (2001) (holding that when "loss" is not defined in an automobile insurance policy, diminished value is an element of an insured's "loss" and thus insurers must assess damaged property for diminished value); *Royal Capital Dev. LLC v. Maryland Cas. Co.*, 291 Ga. 262, 267, 728 S.E.2d 234, 238 (2012) (holding that "loss" has a similar meaning, when not otherwise defined, in insurance policies covering real property).

notwithstanding complete repairs. Thus, when a CARFAX report, for example, reveals that a car has been damaged in an accident, the value of the car in the eye of a potential purchaser decreases even though the car has been repaired.

It is helpful to discuss what has happened in the first of these putative class actions, *Thompson v. State Farm Fire and Casualty Insurance Company*. In *Thompson*, the Court granted in part and denied in part the plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3) or 23(c)(4). No. 5:14-cv-32, Doc. 78 at 1 (Mar. 9, 2016). Specifically, the Court, applying *Mabry*, certified a class of State Farm policyholders to assert:

> A breach of contract claim against State Farm based on its failure to assess for diminished value.

*Id.* at 27-28. The plaintiffs also requested certification of a claim for "failure to pay" for diminished value, but the Court found that "the absence of predominance precludes certification of the . . . failure to pay claim . . . ." *Id.* at 18.

Subsequently, the Court ruled on several competing motions for summary judgment, finding that, as a matter of law, (1) State Farm's standard form policies covered diminished value, (2) State Farm breached its duty to assess for diminished value, and (3) the plaintiffs were not entitled to recover monetary damages for that breach; rather, the remedy for breach of the duty to assess, pursuant to *Mabry,* was equitable. *Thompson*, No. 5:14-cv-32, Doc. 161 at 3-4 (Aug. 31, 2017).[2]

Here, Brewton's complaint and amended complaints are "cookie cutter" complaints—that is, they are essentially identical to the complaints filed by her lawyers

---

[2] That order also addressed other motions, but the two motions described above are the ones relevant to First Liberty's motion.

against other insurers that claim their policies do not cover diminished value.[3] Specifically, Brewton alleges that her policy covers diminished value, an allegation First Liberty denied in its answer, and then alleges that First Liberty failed to assess her property to see whether its value had decreased. *See generally* Docs. 49 ¶¶ 28, 42; 50 ¶¶ 28, 42. Thus, Brewton alleges First Liberty breached the policy. Doc. 49 ¶ 31.

In its motion for summary judgment, First Liberty argues that Brewton is judicially estopped from bringing this claim because she failed to disclose this claim in her bankruptcy case and thus took inconsistent positions under oath in a manner calculated to make a mockery of the judicial system. Doc. 51-1 at 1. In the alternative, First Liberty argues that partial summary judgment is appropriate on Brewton's failure to assess claim because First Liberty did assess Brewton's property for diminished value. *Id.*

## II. DISCUSSION

### A. Summary Judgment Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City*

---

[3] *See* Doc. 59 at 12-13, Transcript of April 25, 2017 Phone Conference at 12:24-13:1 (Court: "But tell me, is not your Complaint here just a cookie cutter of all your other complaints?" Counsel for Plaintiff: "The Complaint is the same, yes."); *compare, e.g.*, Doc. 49 ¶ 31 ("By failing to account for diminution in value as an element of loss and by failing to pay its insured the diminution in value of its property, Defendant breached the Policy, including the covenant of good faith and fair dealing inherent therein."), *with Long v. State Farm Fire and Cas. Co.*, No. 5:17-cv-28, Doc. 21 ¶ 38 ("By failing to account for diminution in value as an element of loss and by failing to pay its insured the diminution in value of its property, Defendant breached the Policy, including the covenant of good faith and fair dealing inherent therein."), *with Thompson v. State Farm Fire and Cas. Co.*, No. 5:14-cv-32, Doc. 6 ¶ 18 ("By failing to account for diminution in value as an element of loss and by failing to pay its insureds the diminution in value of their property, State Farm breached the Policy, including the covenant of good faith and fair dealing inherent therein.").

of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden rests with the moving party to prove that no genuine issue of material fact exists. *Id.* (citation omitted). The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

If the moving party makes this showing, "the burden shifts to the non-moving party to rebut that showing by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted).

**B.     Judicial Estoppel**

First Liberty argues that Plaintiff is judicially estopped from bringing this action because she failed to disclose her claims against First Liberty in her bankruptcy case. Doc. 51-1 at 6.  Judicial estoppel is an equitable doctrine that prevents a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (internal quotation marks and citation omitted).  Because the Court is hearing this case through its diversity jurisdiction, the Court applies Georgia law to substantive issues, and Eleventh Circuit precedent appears to dictate that "the application of the doctrine of judicial estoppel is governed by state law" in diversity cases.  *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995) (citations omitted).  But Georgia courts follow Eleventh Circuit precedent in applying judicial estoppel when, like here, the plaintiff's alleged inconsistent position under oath was an omission of a claim in a federal bankruptcy proceeding.  *See, e.g., Jowers v. Arthur*, 245 Ga. App. 68, 69, 537 S.E.2d 200, 201 (2000) ("Since 1994 we have followed the federal doctrine of judicial estoppel.") (citations omitted); *see also Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454, 455, 442 S.E.2d 265, 266 (1994) ("We apply federal law in order to give the proper effect to the judgment of the bankruptcy court sitting in Texas which ruled upon plaintiff's bankruptcy case."); *see also Thompson v. Quarles*, 392 B.R. 517, 526 n.10 (S.D. Ga. Bankr. 2008) (noting and describing as "peculiar" the fact that "a state court would apply a federal procedural doctrine at all, or that it would apply a federal substantive doctrine to a state law claim," while the Eleventh Circuit would apply state

law to the same issue in diversity cases).[4]  Given all that, the Court turns to Eleventh Circuit precedent, with one significant exception.

The Eleventh Circuit has articulated a two-part test for establishing the bar of judicial estoppel: "[f]irst, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (internal quotations and citation omitted), *overruled in part by Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017); *see Richards v. D.R. Horton, Inc.*, 320 Ga. App. 771, 779, 740 S.E.2d 732, 738 (2013) (applying this test to bankruptcy judicial estoppel in a Georgia state law case); *see also IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 766, 573 S.E.2d 58, 59-60 (2002) (noting (1) Georgia courts' "striv[ing] to apply the 'federal' doctrine of judicial estoppel, and (2) criticism for "failing to reflect accurately the state of federal 'judicial estoppel' law," and finding that the Georgia courts' approach adequately comports with the equitable process set out in three factors by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001)).  The *Burnes* questions are not exhaustive, and "courts must always give due consideration to the circumstances of the particular case." *Robinson*, 595 F.3d at 1273 (citation omitted).

Brewton argues that judicial estoppel is inappropriate, primarily because her bankruptcy repayment plan obligated her to pay back "100% of the debt owed to any

---

[4] In any event, the Eleventh Circuit's and Georgia courts' approaches largely match, and where Georgia law appears to differ from federal law on bankruptcy judicial estoppel, it does so in ways that limit rather than expand the application of judicial estoppel.  *See Tuten v. Target Corp.*, 2014 WL 6908866, at *2 (S.D. Ga.) ("Georgia follows the federal doctrine of judicial estoppel, except when it does not: not every aspect of federal judicial estoppel is followed by the Georgia courts . . . .  Under Georgia law, a plaintiff may amend an erroneous bankruptcy schedule to avoid judicial estoppel.").  "Thus, where a party has successfully amended its bankruptcy petition, judicial estoppel will not operate to bar a future claim" under Georgia law.  *Ussery v. Allstate Fire and Cas. Ins. Co.*, 150 F. Supp. 3d 1329, 1340 (M.D. Ga. 2015).

creditor who had submitted a proof of a claim."  Doc. 53 at 23.  In her affidavit, she testifies (1) "[a]t no time during the pendency of [her] bankruptcy did [she] seek to have the amount [she] was to pay [her] creditors reduced to an amount less than 100%," and (2) she "completed the payment plan within the time allotted and [she] paid 100% of the debt owed to every creditor who submitted a proof of claim."  Doc. 53-18 at ¶¶ 26-27.  First Liberty, however, finds it significant that the bankruptcy trustee's final report stated $2,123 in "[a]mount of unsecured claims discharged without payment," making it "unclear . . . whether [Brewton] actually repaid 100% of her debts."  Docs. 53-17 at 2; 54 at 9.

Also, after First Liberty filed its motion, Brewton moved to re-open her bankruptcy case to disclose her claim.  Doc. 53 at 21.  The bankruptcy court granted the motion and gave her ten days to amend her petition.  Docs. 58; 58-1.  This is significant because, under Georgia law, a party "can avoid the application of judicial estoppel simply by filing a motion to amend the debtor's bankruptcy petition or a motion to reopen the debtor's bankruptcy case to declare the omitted claim or cause of action." *Rowan v. George H. Green Oil, Inc.*, 257 Ga. App. 774, 776, 572 S.E.2d 338, 339 (2002) (citations omitted); *see also Tuten v. Target Corp.*, 2014 WL 6908866, at *3 (S.D. Ga.) ("Georgia permits a plaintiff to escape judicial estoppel via amendment.  Therefore, a federal court sitting in diversity must do the same.").

Notwithstanding Brewton's intent to repay her creditors in full, First Liberty argues that Brewton's mere "concealment of the claims pending in this lawsuit with the expectation of monetary recovery is sufficient evidence of a motive" for the Court to infer intent to make a mockery of judicial proceedings.  Doc. 51-1 at 9 (citations omitted).

Although it is difficult to see how Brewton stood to benefit from her failure to disclose her claims against First Liberty, which in turn makes it difficult to ascribe any ill motive to her, based upon Eleventh Circuit precedent at the time, First Liberty had a plausible argument that the Court could "infer[] from [Brewton]'s nondisclosure alone that she intended to manipulate the judicial process." *See Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (stating Eleventh Circuit precedent).

But as the parties were briefing the issue, the Eleventh Circuit had pending for en banc review *Slater v. United States Steel Corporation*. In its en banc decision, the Eleventh Circuit clarified, to Brewton's benefit, the standard for bankruptcy judicial estoppel. In *Slater*, the Eleventh Circuit held:

> [W]hen determining whether a plaintiff who failed to disclose a civil lawsuit in bankruptcy filings intended to make a mockery of the judicial system, a district court should consider all the facts and circumstances of the case . . . . [V]oluntariness alone does not necessarily establish a calculated attempt to undermine the judicial process. We therefore overrule the portions of [Eleventh Circuit precedent] that permit a district court to infer intent to misuse the courts without considering the individual plaintiff and the circumstances surrounding the nondisclosure.

871 F.3d at 1176-77. The Eleventh Circuit continued:

> When the plaintiff's inconsistent statement comes in the form of an omission in bankruptcy disclosures, the court may consider such factors as the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

*Id.* at 1185. The Eleventh Circuit also noted that its list was not exhaustive. *See id.* at 1185 n.9. Courts must consider all of the facts and circumstances of a case because "[a]s an equitable doctrine, judicial estoppel should apply only when the plaintiff's conduct is egregious enough that the situation demands equitable intervention." *Id.* at 1187 (internal punctuation and quotation marks and citation omitted).

Responding to *Slater*, First Liberty argues that Brewton's claim is still judicially estopped because "[i]n essence, the *Slater* decision stands for [the] narrow premise that the district court should not necessarily view all omissions as an attempt to mislead the court and should instead conduct an individual review of circumstances to determine the appropriateness of judicial estoppel." Doc. 56 at 3 (citation omitted). Thus, First Liberty argues, Brewton "remains judicially estopped from pursuing her claims against First Liberty, and First Liberty is entitled to judgment as a matter of law." *Id.* at 2.

The Court disagrees. The evidence, considered as a whole, simply does not support the inference, much less establish as a matter of law, that Brewton's actions were "calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285. On the contrary, Brewton's nondisclosure appears to have been inadvertent, and, given her intent to repay her creditors in full, the Court easily finds that First Liberty has not established as a matter of law that Brewton is judicially estopped from pursuing her claims. Moreover, Brewton has amended or will soon amend her bankruptcy petition to list her First Liberty claims, and "[c]onsequently, under Georgia law, [Brewton] can no longer be said to have taken a position in this proceeding that is inconsistent with the position taken in [her] bankruptcy proceeding." *Ussery v. Allstate Fire and Cas. Co.*, 150 F.Supp.3d 1329, 1340 (M.D. Ga. 2015) (citation omitted).

Accordingly, First Liberty has not established as a matter of law that Brewton is judicially estopped from pursuing her claims.

**C.    First Liberty's Assessment for Diminished Value**

When Brewton filed this lawsuit, her lawyers assumed they were suing yet another insurance company that stubbornly refused to acknowledge that its homeowner's policies covered diminished value. But, as her lawyers only eventually learned, they were wrong. To its credit, First Liberty had recognized that the Georgia Supreme Court meant what it said in *Mabry* and *Royal Capital*—casualty policies cover diminished value. Accordingly, First Liberty instituted a four-step procedure for its adjusters to use to determine whether diminished value existed. First Liberty's adjusters were charged with: (1) verifying that *Royal Capital* applies to the claim by determining whether the claim was a first-party real property claim in Georgia, (2) deciding whether diminished value could exist by looking for certain "unusual" circumstances in which diminished value "could apply" even with full repairs, (3) determining whether repairs returned the property to its pre-loss value, and (4) communicating that diminished value was considered but not found to the insured and noting the decision in the claim file. Docs. 51-1 at 3-4; 51-10 at 2-3.

In Step 3, the adjuster must "consult with examining" if the adjuster determines that it is possible repairs failed to return the property to its pre-loss value. At that point, diminished value is investigated and handled by "a whole other department." Doc. 51-6 at 8:3-4. If necessary, claims personnel can retain an appraiser "to assist in the valuation of the property." Doc. 51-10 at 3.

When Brewton filed her insurance claim with First Liberty, First Liberty did not dispute that Brewton's policy covered diminished value; accordingly, a First Liberty adjuster assessed her loss, approved payment for repairs, and concluded that the value of her home had not decreased. *See* Doc. 51-6 at 6:19-23, 21:2-27:10 (First Liberty's adjuster of Brewton's claim, testifying that he inspected Brewton's home twice, considered diminished value, and concluded that Brewton's home had not suffered diminished value).

All of this meant that the factual underpinnings of Brewton's complaint had collapsed. First Liberty, unlike the other insurers sued by Brewton's lawyers, had acknowledged that its policies covered diminished value, and it had assessed Brewton's home to see if its value had decreased.

It is not clear when Brewton's lawyers learned of their mistake. They reasonably could have expected that First Liberty's answer would have alerted them to the fact that they were way off course. But First Liberty chose, for reasons unknown, not to disclose in its answer that unlike the other insurers sued by Brewton's lawyers, it had done the right thing after *Royal Capital*; it had acknowledged its policies covered diminished value and had assessed claims accordingly. For example, First Liberty denied Brewton's allegation that her policy covered diminished value. Doc. 36 at 5 ("Paragraph 42 contains legal conclusions to which no response is required. To the extent that a response is required, First Liberty denies the allegations in paragraph 42.").

Nor did Brewton's lawyers learn of their mistake when the lawyers convened their discovery conference on April 18, 2016 and drafted their proposed scheduling order. The scheduling order prepared by the lawyers and adopted by the Court reveals that

Brewton's lawyers still thought that First Liberty maintained that its policy did not cover diminished value and thus had not assessed for diminished value. *See* Doc. 35 at 1 (describing as the nature of the case a claim that First Liberty "failed to assess and pay for damages for diminution in value"). Thus, the scheduling order makes no mention of the significant fact that, unlike other insurers, First Liberty had acknowledged coverage for diminished value.

The earliest evidence in the record of when Brewton's lawyers learned that their claim was "fundamentally" flawed is found in an April 3, 2017 letter attached to First Liberty's motion for summary judgment. Doc. 51-1. In this letter, First Liberty's counsel informed Brewton's lawyers that discovery "has presented two fundamental problems with Ms. Brewton's claims." *Id.* at 2. One was her failure to disclose her claim in her bankruptcy case—which, as discussed, was not much of a problem after the en banc decision in *Slater*. *Id*. But the other problem was indeed fundamental—First Liberty, the letter asserts, had in fact assessed Brewton's home for diminished value when it adjusted her claim. *Id.* at 2, 4. That is, First Liberty did not dispute that its policy covered diminished value, and it did not fail to assess for diminished value. *Id*. In short, this was not a *Mabry/Royal Capital* case. It was just a simple, garden variety dispute over the value of a fully-covered claim. That meant Brewton's failure to assess claim was patently without merit, and thus, as the letter puts it, "Brewton cannot in good faith continue to pursue her claim for breach of contract based on the 'failure to assess.'" *Id*. at 4. The letter advised Brewton's lawyers that First Liberty would move for summary judgment if Brewton did not agree to dismiss her case within ten days of counsel's letter. *Id*. Brewton apparently did not so agree, and thus First Liberty filed this motion.

But Brewton's lawyers were unfazed by the collapse of their failure to assess claim. They maintain in their response to First Liberty's motion for summary judgment (but not by way of an amended complaint) that their failure to assess claim is now a failure to *properly* assess claim. Doc. 53 at 14-17. Thus, as is routine in garden variety disputes between an insurer and its insured over the value of a claim, Brewton attacks First Liberty's assessment of the value of her loss. She argues that First Liberty's operating procedure "does not provide any direction to adjusters on how to determine whether the property might be less desirable in the marketplace due to stigma." Doc. 53 at 8. Given First Liberty's procedures for assessing for diminished value, this argument seems a little overstated, but it is a fair point for Brewton to make in her garden variety claim that First Liberty failed to pay her enough for her loss.

Brewton also contends that First Liberty's assessment was inadequate because the adjuster was not adequately educated or trained and the adjuster "determined that [her] home had not incurred any [diminished value] after the second visit even though the repairs had not been completed and the 'dry out' was in process." Doc. 53 at 18. This too is a fair argument, and, like any other insured who has sued her insurer because she disagrees with the insurer's valuation of her claim, Brewton can make this argument as she tries to convince a jury that she should get more than what First Liberty is willing to pay.

Brewton also argues that "the only acceptable manner to determine if diminished value exists is to perform an independent real estate diminished value appraisal." Doc.

53 at 14-15 (quoting Affidavit of D. Scott Murphy, SRA, Doc. 53-19 at ¶¶ 11-12).[5] Convincing a jury that insurers must always hire an independent appraiser to assess diminished value likely will be a challenge. It may be better for Brewton to argue that, based on the facts of her case, First Liberty should have hired an independent appraiser to assess her home for diminished value—an argument she could buttress with First Liberty's own procedures that contemplate retaining independent appraisers in particular cases. But, again, these are all arguments Brewton can make in her garden variety dispute over the value of her claim.

The Court's repeated description of Brewton's claim as a "garden variety" dispute over the value of her loss has been intentional. It is to emphasize that Brewton's claim is not a *Mabry/Royal Capital* claim. Nothing in Georgia law supports Brewton's new and un-pleaded theory that an insured can bring a stand-alone claim for the failure to *properly* assess a covered loss. Again, insureds have long had a remedy when they think their insurer has undervalued their claims—they file a lawsuit claiming that they should get more than what their insurers want to pay. *Mabry* afforded an insured another remedy in a very narrow situation. When an insurer improperly denies coverage for diminished value and thus refuses to assess for diminished value, the insured may be entitled to an equitable remedy, *i.e.*, an order directing the insurer to assess for diminished value. *Mabry* did not give the "insured the right to insist on any particular claims handling procedure," but rather "merely required that [insurers] handle

---

[5] The idea that insurers must hire an independent appraiser in every property damage claim would be surprising to the Court, but for the fact that the Court heard, and rejected, this argument in *Thompson*. No. 5:14-cv-32, Doc. 161 (Aug. 31, 2017). There, the plaintiffs contended that they could recover as damages the cost of hiring an independent appraiser, which the plaintiffs estimated to be $2,500. *Id.* at 27. The Court concluded that the plaintiffs were not entitled to damages; rather, pursuant to *Mabry*, they were entitled to injunctive relief—specifically, an order directing State Farm to assess the plaintiffs' property for diminished value. *Id.* Because Brewton got an assessment, albeit an inadequate one in her view, she is not entitled to such injunctive relief.

all elements of loss in each claim" by "develop[ing] an appropriate methodology for making such evaluations." *Mabry*, 274 Ga. at 509-10, 556 S.E.2d at 123-24. *Mabry* does not create a distinct cause of action against an insurer for botching an assessment of a covered loss. And there was no reason for the court in *Mabry* to create such a remedy; as discussed above, one already exists.

Accordingly, the Court tentatively **GRANTS** First Liberty's motion for summary judgment on Brewton's failure to assess claim. Tentatively, only because Brewton suggests—half-heartedly, it seems to the Court—that perhaps further discovery could yield evidence that would defeat First Liberty's motion. *See* Doc. 53 at 24 (arguing skeletally that Brewton "was still conducting discovery to gather additional evidence relevant to Defendant's argument that it has assessed [her] property for [diminished value]"). The Court does not see how that could be possible, but it will afford Brewton's lawyers an opportunity to make their case. The Court will convene a conference to discuss that issue and the remaining issues in the case.

### III. CONCLUSION

For the reasons discussed above, the Defendants' motion is **GRANTED in part** and **DENIED in part**. Brewton's failure to assess claim is **DISMISSED with prejudice**, but Brewton is not judicially estopped from bringing her failure to pay claim against First Liberty.

**SO ORDERED**, this 21st day of November, 2017.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT